UNITED STATES of America,
Plaintiff–Appellee,

v.

Thomas Jeffrey KING, Defendant–
Appellant.

No. 95–5811.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 18, 1998.

Decided March 5, 1999.

Rehearing Denied April 8, 1999.

Gerald L. Gulley, Jr. (argued and briefed) Baker, McReynolds, Byrne, O'Kane & Shea, Knoxville, TN, for Appellant.

Gregg L. Sullivan (argued and briefed), Office of the U.S. Attorney, Chattanooga, TN, for Appellee.

Thomas Jeffrey King (briefed), Talladega, AL, pro se.

Before: MERRITT, NORRIS, and GILMAN, Circuit Judges.

## OPINION

GILMAN, Circuit Judge.

Thomas Jeffrey King was convicted of (1) conspiracy to conduct and attempt to conduct financial transactions involving the proceeds of unlawful activity, (2) conducting and attempting to conduct illegal financial transactions affecting interstate commerce, (3) possession of marijuana with intent to distribute, and (4) conducting a continuing criminal enterprise. He appeals, claiming that the district court erred in denying his motion for judgment of acquittal, that the jury was im-

properly instructed, that the evidence was insufficient to support the continuing criminal enterprise conviction, and that the trial was fundamentally unfair. For the reasons set forth below, we AFFIRM the judgment of the district court.

## I. BACKGROUND

King was involved in a long-term drug distribution business. His business partner and brother-in-law, Lewis Haney, testified at trial as a government witness. Haney said that in the early 1980s, he and King routinely purchased 30–50 pound loads of marijuana from two individuals living in Memphis, Tennessee, which they then sold in Monteagle, Tennessee. According to Haney's testimony, King was primarily responsible for the purchase of the drugs, while Haney was primarily responsible for their distribution. After a few years, Haney and King bought a video store, allegedly utilizing the profits made from the marijuana business. Haney ran the video store, while King continued in the drug business. In August of 1986, King sold his share of the store to Haney and moved to Texas for approximately eight months.

Upon King's return, King and Haney continued in the marijuana business, this time employing others to transport the drugs and money between Tennessee and Texas. King was primarily responsible for contacting marijuana sources in Texas and ordering the shipments. Once the funds were collected, a courier hired by King would be sent to Texas to purchase the drugs. King and Haney furnished the vehicles and paid for the couriers' expenses necessary to complete these deliveries. The shipments averaged approximately 1,000 pounds of marijuana per year. Individuals were also utilized by the organization to mix, weigh, and distribute the marijuana once it was delivered to Tennessee. Haney testified that although he and King were partners in the business, King was the boss of the organization: "We were partners, but he had all the say-so because he would arrange for [the drugs] to get here. He knew the people." Various haulers corroborated Haney's testimony and testified as to the organization of the business, which continued from approximately 1987 to 1993.

Haney identified at least seven haulers who King supervised, managed, and controlled in conducting this organization. Numerous haulers testified at trial that they often dealt with three or four other individuals who were hired by either Haney or King. Petra Reyes, one of King's suppliers, testified that she delivered marijuana to and received money from at least five couriers employed by King.

One of King's couriers, Tommy Dalton, agreed to cooperate with the authorities after being arrested on marijuana charges in 1991. He recorded approximately thirty conversations in which King discussed marijuana transactions, marijuana sources, and previous marijuana deals. These recordings were introduced at trial.

Individuals hired by King also testified that King utilized Western Union to wire funds to couriers to pay for past deliveries of marijuana and for expenses incurred during hauling. Although some of these funds were not wired in King's name personally, testimony was introduced that King was in charge of these transactions. Records from Western Union documenting wire transfers from Tennessee to Texas, which corroborated this testimony, were introduced at trial. These wire transfers exceeded $15,000.

Also introduced at trial were telephone records establishing calls from the home of King's parents to his marijuana sources in Texas, and King's income tax returns which showed a gross income of only $27,017.41 during the seven-year period from 1987 to 1993. Finally, Haney testified that he and King were in possession of and responsible for quantities of marijuana seized by the police in January and August of 1993.

On September 13, 1994, King was indicted on 23-counts. Count 1 alleged that King illegally engaged in a continuing criminal enterprise relating to the unlawful possession and distribution of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846. Count 2 charged King with conspiracy to distribute, and possession with intent to distribute, marijuana in violation of 21 U.S.C. § 846. Count 3 charged King with conspiracy to knowingly conduct and attempt to conduct financial transactions involving the proceeds of unlawful activity with the intent to promote the

carrying on of such activity in violation of 18 U.S.C. § 1956(h).

Counts 4–6, 8–10, 15–17, and 20–22 alleged that King conducted and attempted to conduct illegal financial transactions affecting interstate commerce in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(a)(2) (referred to as the money laundering counts). Counts 7, 11–14, 18–19, and 23 charged King with possession of marijuana with intent to distribute the same in violation of 21 U.S.C. § 841(a)(1). Upon the government's motion, Counts 15, 16, and 21 were dismissed by the court on January 20, 1995.

At the close of the government's proof, King filed a motion for judgment of acquittal pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure. The district court denied the motion. King renewed the motion at the close of his proof, but the motion was again denied.

On March 6, 1995, a jury found King guilty on all of the remaining counts. Because a defendant cannot be convicted of both a continuing criminal enterprise violation and a conspiracy charge based upon the same facts, the district court vacated King's conspiracy conviction (Count 2) by order dated May 30, 1995. King was sentenced to a total of 262 months of imprisonment, a special assessment of $1,000, and supervised release of up to five years. This appeal followed.

## II. ANALYSIS

### A. King's motion for judgment of acquittal on the money laundering counts

#### 1. Standard of review

■ King claims that the district court committed legal error by failing to grant his Rule 29 motion for judgment of acquittal on the counts involving money laundering (Counts 4–6, 8–10, 17, 20, and 22). A motion for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure is "a challenge to the sufficiency of the evidence." *United States v. Jones*, 102 F.3d 804, 807 (6th Cir.1996). "Evidence is sufficient to support a criminal conviction if, after viewing the evidence in the light most favorable to the government, any rational trier of

fact could have found the elements of the crime beyond a reasonable doubt." *United States v. Beddow,* 957 F.2d 1330, 1334 (6th Cir.1992). In making this determination, we are to consider the record as a whole, including both direct and circumstantial evidence. *See id.*

*2. Denial of King's motion for judgment of acquittal*

■ King was convicted of violating 18 U.S.C. § 1956(a)(1), which states in pertinent part as follows:

Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—(A)(i) with the intent to promote the carrying on of specified unlawful activity ... shall be sentenced [according to this statute.]

In order to find King guilty of violating this statute, the prosecution must prove that he "(1) conducted a financial transaction that involved the proceeds of unlawful activity; (2) knew the property involved was proceeds of unlawful activity; and (3) intended to promote that unlawful activity." *United States v. Haun,* 90 F.3d 1096, 1100 (6th Cir.), *cert. denied,* 519 U.S. 1059, 117 S.Ct. 691, 136 L.Ed.2d 614 (1997).

Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found King guilty of the essential elements of this crime. First, the record reveals that King coordinated a multi-person drug distribution business. On numerous occasions he conducted financial transactions, transferring money via Western Union to his couriers. Various individuals employed by King in this operation testified at trial about these transactions, and records from Western Union were introduced that documented the transfers.

Second, King had a minimal amount of income from legitimate sources during these years, as evidenced by his income tax returns. These returns listed a gross income of only $27,017.41 for the seven-year period from 1987 to 1993. Because the amounts transferred by wire during this period of time exceeded $15,000, a rational trier of fact could find that the wire transfers involved the proceeds of unreported drug transactions and, given his personal involvement in the business, that King was aware of this source.

■ Third, a rational trier of fact could find that King intended to "promote" his ongoing drug business. On more than one occasion, King wired funds to his couriers in payment for prior marijuana deliveries. Payment for drugs may constitute "promotion" for the purposes of the money laundering statute when such payment encourages further drug transactions. *See, e.g., United States v. Baker,* 63 F.3d 1478, 1494 (9th Cir.1995) (stating that paying a supplier "promotes" the carrying on of the unlawful activity because the defendant "could not have continued the illegal trafficking without paying his ... suppliers."); *United States v. Torres,* 53 F.3d 1129, 1137 n. 6 (10th Cir. 1995) (finding that using drug money to buy more drugs to be resold at a later time "promotes" the specific unlawful activity); *United States v. Skinner,* 946 F.2d 176, 177–78 (2d Cir.1991) (holding that payments to drug suppliers "promoted" the ongoing fraudulent scheme).

King cites *United States v. Heaps,* 39 F.3d 479 (4th Cir.1994), in support of his argument that the payment of money for drugs previously delivered on consignment does not constitute "promotion." The facts in *Heaps,* however, are distinguishable from those in the present case. In *Heaps,* the Fourth Circuit held that cash payment for the sale of drugs did not constitute the "promotion" of a drug offense *when there was no evidence of a subsequent sale. See id.* at 484. Unlike *Heaps,* the financial transactions in the instant case were followed by subsequent sales of marijuana. Thus *Heaps* provides no support for King's position.

King not only wired funds to his couriers as payment for prior deliveries of marijuana, but also wired funds on more than one occasion to pay for current expenses so that they could complete their deliveries. A rational trier of fact could have found that these payments furthered King's ongoing drug business. *See United States v. Savage,* 67 F.3d 1435, 1441 (9th Cir.1995) (holding that

financial transfers allowed the defendant to travel and to continue contacting his investors, thereby "promoting" his ongoing fraud); *United States v. Westine,* No. 92–3664, 1994 WL 88831, at *2 (6th Cir. March 17, 1994) (stating that payment of office expenses and salespersons' commissions constituted "promotion" in connection with a fraudulent investment scheme).

█ King also argues that, at the time of his conviction, the wiring of money via Western Union was not a "financial transaction" according to the statute. He cites *United States v. Samour,* 9 F.3d 531 (6th Cir.1993), and *United States v. Oleson,* 44 F.3d 381 (6th Cir.1995), in support of this argument. Although both of these cases were subsequently overruled by *United States v. Reed,* 77 F.3d 139 (6th Cir.1996) (en banc), *Samour* and *Oleson* were binding at the time of King's conviction. These cases, however, held that "'merely transporting *cash* does not meet the definition of 'financial transaction' for the purposes of the money laundering statute.'" *Oleson,* 44 F.3d at 384 (quoting *Samour,* 9 F.3d at 536) (emphasis added). In the present case, King's money laundering conviction was based upon wire transfers, not the transportation of cash, and wire transfers are clearly within the definition of a "financial transaction" as defined in the money laundering statute: "[T]he term 'financial transaction' means (A) a transaction which in any way or degree affects interstate or foreign commerce (i) involving the movement of funds *by wire* or other means ..." 18 U.S.C. § 1956(c)(4) (emphasis added).

For the above reasons, the evidence was sufficient to support King's conviction on the money laundering counts, and the district court properly denied King's motion for judgment of acquittal.

## B. Challenge to jury instructions

### 1. *Standard of review*

█ King claims that the district court failed to instruct the jury regarding the necessity for a unanimous verdict on which three predicate offenses comprised the continuing criminal enterprise ("CCE"). Because King's counsel failed to object to the court's instructions at trial, we review the challenged jury instruction under a "plain error" standard. *See United States v. Wilkinson,* 26 F.3d 623, 625 (6th Cir.1994). "An instruction is not plainly erroneous unless there was 'an egregious error, one that directly leads to a miscarriage of justice.'" *Id.* (quoting *United States v. Busacca,* 863 F.2d 433, 435 (6th Cir.1988)).

### 2. *Jury instructions*

█ To convict a defendant for a violation of the CCE statute, the prosecution must prove, among other things, that the drug offense was part of a continuing series of violations. This court has held that a continuing series of violations consists of three or more offenses. *See United States v. Avery,* 128 F.3d 966, 973 (6th Cir.1997) ("In order to convict a defendant of engaging in a continuing criminal enterprise, the United States must prove ... that the violation was part of a continuing series of three or more drug offenses committed by the defendant"). In charging the jury, the district judge stated that in order to find King guilty of engaging in a CCE, it had to find him guilty of "three or more violations of the federal drug laws which are in some way related to one another." The jurors were instructed that they could consider the nine marijuana-related offenses which were also alleged as separate counts in the indictment in making this determination (Counts 2, 7, 11–14, 18–19, and 23). The court also instructed the jury that it could consider other violations of the drug laws which were not separately charged as marijuana-related offenses in the indictment, but which were established by the testimony or evidence presented at trial. Thus, although the jurors were told that they had to unanimously agree that King committed three or more related violations of the federal drug laws, they were not instructed that they had to unanimously agree as to which three predicate offenses made up the series of violations underlying the CCE.

This circuit has no published opinion addressing whether the jury must be instructed to reach unanimous agreement as to which three offenses make up the series of violations underlying a CCE charge. *But see United States v. Wint,* No. 90-3100, 1991 WL 139701 (6th Cir. July 30, 1991) (holding that

the court's failure to issue such an instruction was not plain error when the defendant was convicted of all of the underlying predicate offenses). The Fourth, Seventh, and Eleventh Circuits have held that such an instruction is not necessary. *See United States v. Hall,* 93 F.3d 126, 129 (4th Cir.1996) ("Under the plain meaning of this section, as long as each juror is satisfied in his or her own mind that the defendant committed acts constituting the series, the requisite jury unanimity exists."); *United States v. Canino,* 949 F.2d 928, 947–48 (7th Cir.1991) ("[W]e hold that once each juror finds beyond a reasonable doubt that a CCE defendant committed at least two predicate offenses the purpose of the CCE is satisfied.... We do not require that the jurors unanimously agree as to the same predicate acts."); *United States v. Lehder–Rivas,* 955 F.2d 1510, 1519 n. 6 (11th Cir.1992) ("[Defendant] additionally contends that the district court committed reversible error by failing to instruct the jury that ... the jury must be unanimous in its finding of particular predicate acts before it may find a continuing criminal enterprise. [This] instruction is [not] required."). In contrast, the Third Circuit has held that such an instruction is necessary, but found the lack of the instruction to be harmless error in the case before it. *See United States v. Edmonds,* 80 F.3d 810, 823–25 (3d Cir.1996) (en banc) (holding the lack of the instruction to be harmless error when the jury found that the defendant had committed each of the predicate offenses underlying the CCE, and that the predicate offenses were related to each other).

 We need not decide in this case whether the jury must be instructed to reach a unanimous agreement as to which offenses constitute the CCE because, even assuming that such an instruction is necessary and that the district court therefore erred in failing to issue such an instruction, the error was harmless under the circumstances. According to Rule 52(a) of the Federal Rules of Criminal Procedure, "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." "This court has stated that where an error is not of constitutional dimension, it is harmless unless it is more probable than not that the error materially affected the verdict." *Unit-*

*ed States v. Toney,* 161 F.3d 404, 410 (6th Cir.1998) (internal quotation marks omitted). In making this determination, we must review the record as a whole. *See id.*

In this case, King was convicted on all of the underlying predicate offenses. We thus have no doubt that the jury was unanimous in finding that King committed not only three, but nine marijuana-related predicate offenses. Moreover, the evidence presented to the jury clearly established that these offenses were related to one another, because they were all part of King's ongoing drug distribution business. King has never claimed otherwise. Given this record, no rational jury could unanimously find King guilty of the underlying predicate offenses without also unanimously finding that these offenses were related to each other. Consequently, even if we were to assume that the district court erred in not instructing the jury that it had to unanimously agree as to which three predicate offenses constituted the CCE (and we expressly do *not* make such an assumption), the alleged error did not affect the verdict in this case and was therefore harmless.

## C. Sufficiency of the evidence to support the conviction for engaging in a continuing criminal enterprise

### 1. Standard of review

Sufficient evidence exists to support a conviction if "after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *United States v. Beddow,* 957 F.2d 1330, 1334 (6th Cir.1992). In making this determination, we are to consider the record as a whole, including both direct and circumstantial evidence. *See id.*

### 2. Evidence establishing a continuing criminal enterprise

 The government had to prove five elements in order for King to be found guilty of conducting a CCE in violation of 21 U.S.C. § 848: "1) a felony violation of a federal narcotics law; 2) as a part of a 'continuing series of violations;' 3) 'in concert with five or more persons;' 4) for whom

[King] is an organizer or supervisor; and 5) from which he derives substantial income." *United States v. Ward,* 37 F.3d 243, 247 (6th Cir.1994). King argues on appeal that the prosecution failed to present sufficient evidence that he acted in concert with five or more other persons with respect to whom he occupied a position of organizer, supervisor, or manager.

 This court has held that simply proving that individuals have a buyer-seller relationship is not sufficient to support a conviction under this statute. *See United States v. Elder,* 90 F.3d 1110, 1122–23 (6th Cir.1996) (holding that the evidence was sufficient to support a finding that five or more individuals acted at the direction of the defendant, and that they were not simply in buyer-seller relationships). Rather, the government has to prove that the defendant had overall supervisory and managerial control of the business. *See id.* The relationship requirement between the supervisor and these individuals, however, is flexible. The supervisor need not have relationships with these individuals at the same time, nor do these individuals have to serve the same function within the organization. *See United States v. Avery,* 128 F.3d 966, 973 (6th Cir.1997) ("A person can be found to be under the defendant's organization or supervision because she knew about the drug operation, took orders directly from the defendant and helped in the business. A broker or courier under the defendant's supervision, someone who stores drugs for the defendant, or one who collects or launders drug proceeds is also within the ambit of the statute.") (internal citations and quotation marks omitted). In addition, the supervisor does not have to have personal contact with these individuals as long as there is evidence that the individuals were involved with the supervisor in some fashion. *See United States v. Ward,* 37 F.3d 243, 250 (6th Cir.1994) (reversing the defendant's conviction because the individuals working for the defendant's middleman could not automatically be attributed to the defendant, and, without these individuals, the evidence was insufficient to find that the defendant managed or controlled five or more individuals).

In reviewing the record, we find that there was sufficient evidence to establish beyond a reasonable doubt that King had managerial control over five or more persons involved in the drug distribution business. His partner, Haney, identified seven people who were recruited by King and paid by the organization to transport or supply marijuana from Texas to Tennessee. One of King's suppliers, Petra Reyes, identified at least five couriers with whom she personally dealt who operated at King's direction. Others involved in the business corroborated this testimony, identifying numerous individuals who worked for King by either transporting marijuana or assisting the business in some manner. While some testified that they did not work directly with King, many stated that King was in charge of the organization.

In response, King argues that these individuals were independent contractors, and were therefore not under King's managerial control. Whether King's couriers are labeled "employees" or "independent contractors," however, is not controlling for two reasons. First, whether a hired party is an employee or an independent contractor is a factual issue left to the jury's determination. *See United States v. David,* 940 F.2d 722, 731–32 (1st Cir.1991) ("Although [defendant] argues vigorously that [his middleman's] status was more akin to that of an independent contractor, we think any ambiguity was for the jury to resolve."); *Jackson v. Roadway Package Sys., Inc.,* No. 97–1731, 1998 WL 739821, at *2 (6th Cir. Oct. 6, 1998) ("[Appellant's] brief on appeal contains an argument that his status as an employee or independent contractor is a question of law that should not have been submitted to the jury. At oral argument, however, ... [he] conceded (correctly, we believe) that the question is one of fact."). In this case, the jury convicted King for engaging in a CCE. To do so, it must have concluded that, regardless of how the couriers were labeled, they served under King's managerial authority.

Second, even if we accept King's argument, we are of the opinion that an individual can violate the CCE statute by exercising managerial authority over independent contractors, as well as over employees. The Second Circuit, when faced with this issue in *United States v. Cruz,* 785 F.2d 399 (2d Cir.1986), stated that it would not "read into the statute a distinction between salaried 'employees' working directly under a 'King Pin' and 'in-

dependent contractors' or 'franchisees' who deal only with subordinates." *Id.* at 407. *See also David,* 940 F.2d at 732 ("The CCE statute can be satisfied by evidence that the defendant organized five or more people in the criminal endeavor without any proof that the defendant exercised knee-jerk control over those whom he organized, or that they were his puppets."); *United States v. Delgado,* 4 F.3d 780, 785 (9th Cir.1993) ("[A] project manager for a general contractor ... organizes the efforts of the independent contractors ..., without controlling the details of their performance. He manages, even though, since they are independent contractors, he does not control."). Because the statute contains no distinction between employees and independent contractors, and because such a distinction would allow drug king pins to organize their dealings in such a way as to escape responsibility, we agree with the Second Circuit's holding in *Cruz,* and conclude that an individual may violate the CCE statute by managing or supervising either an employee or an independent contractor.

King also argues that the testimony of his co-conspirators was not credible because they themselves were the subjects of criminal prosecution, and were seeking relief in exchange for their testimony. But the credibility of witnesses is a jury determination. *See United States v. Clark,* 928 F.2d 733, 736 (6th Cir.1991) (holding that there was sufficient evidence to support defendants' convictions of drug and firearms charges). In support of the jury's assessment of the witnesses' credibility, it is evident from the record that the witnesses testified as to their plea agreements. Moreover, most of the trial testimony was corroborated by both documentary evidence and consistency with other witnesses, as well as the tape-recorded conversations between King and one of his couriers discussing King's involvement in the distribution and sale of marijuana. *See United States v. Elder,* 90 F.3d 1110, 1124 (6th Cir.1996) (holding that the testimony of coconspirators was sufficient to support the defendant's conviction of conducting a continuing criminal enterprise).

For the above reasons, we conclude there was sufficient evidence to find King guilty of engaging in a continuing criminal enterprise.

### D. King's *pro se* briefs

King raises numerous arguments in his three *pro se* briefs. Some of these arguments are addressed by his court-appointed attorney and have been discussed above. King's other arguments include, but are not limited to, claims of double jeopardy, selective prosecution, and improper indictment.

He specifically argues that many of the government's witnesses were offered leniency in exchange for their testimony, and that these plea bargains violate 18 U.S.C. § 201(c)(2), which prohibits bribery in exchange for testimony. This court recently held, however, that an offer by the government of leniency to a witness in exchange for the witness's testimony does not violate the bribery prohibitions of the statute. *See United States v. Ware,* 161 F.3d 414 (6th Cir.1998).

Without discussing King's other allegations in detail, suffice it to say that they are either legally incorrect or unsupported by the record. Having carefully reviewed each of these allegations, we find that none of them, either individually or collectively, has any legal merit that would require the reversal of King's convictions.

### E. Fundamental unfairness

King claims that cumulative errors in the trial, if not so prejudicial on an individual basis as to constitute a deprivation of due process, nevertheless resulted in a trial that was so fundamentally unfair that it violated his rights pursuant to the Fifth Amendment. King, however, fails to provide any legal support for this assertion, and fails to point to any errors other than those already discussed in the prior sections. We therefore find that the trial was not fundamentally unfair.

### III. CONCLUSION

For all of the reasons stated above, we AFFIRM the judgment of the district court.