**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert LONG, Defendant–Appellant.**

**No. 97–4324.**

United States Court of Appeals,
Sixth Circuit.

Argued June 15, 1999

Decided July 27, 1999.

David C. Young (argued and briefed), Sunbury, Mann & Young, Columbus, Ohio, for Defendant–Appellant.

Robyn Jones (argued and briefed), Office of the U.S. Attorney, Columbus, Ohio, for Plaintiff–Appellee.

Before: GUY, COLE, and CLAY, Circuit Judges.

RALPH B. GUY, JR., Circuit Judge.

Defendant, Robert Long, was convicted following a joint trial with three co-defendants on 26 charges arising out of a long-running multi-state conspiracy to distribute cocaine and launder the proceeds. Long was convicted of conspiracy to distribute and to possess with intent to distribute cocaine, 21 U.S.C. § 846; eight counts of possession with intent to distribute cocaine and two counts of distribution of cocaine in differing amounts, 21 U.S.C. § 841 and 18 U.S.C. § 2; use of communication facility to facilitate the distribution of cocaine, 21 U.S.C. § 843(b) and 18 U.S.C. § 2; conspiracy to commit money laundering, 18 U.S.C. § 1956(h); twelve counts of money laundering, 18 U.S.C. § 1956(a)(1)(B)(i) and 18 U.S.C. § 2; and operating a continuing criminal enterprise (CCE), 21 U.S.C. § 848.[1]

1. The conviction for conspiracy to distribute cocaine was vacated without prejudice at the time of sentencing because the conspiracy charge was a lesser included offense of the CCE charge. The court indicated that it vacated the conviction for sentencing purposes,

On appeal, defendant argues that (1) there was insufficient evidence to support his conviction on the CCE charge; (2) he was prejudiced by the denial of a separate trial from co-defendant Mark Ross; (3) the court erred in denying a mistrial on the grounds of prosecutorial misconduct; and (4) he received ineffective assistance of counsel. Long also contends that the district court erred in finding he should be held responsible for more than 50 kilograms of cocaine in calculating the applicable sentencing guideline range. After careful review of the record and the arguments on appeal, we affirm.

## I.

Robert Long was charged along with 30 other defendants in a 113–count indictment alleging a conspiracy to distribute cocaine beginning in late 1985 or early 1986 and continuing until the time of the indictment in May 1996. Robert Long, Robert Camero, and Donald Mohler, Jr., joined in a scheme to distribute marijuana in Columbus, Ohio, through Mohler's aunt, Karen Climer Collins Long (Karen Long).[2] It was after the arrest of several couriers in 1986 that Robert Long and Donald Mohler switched to the distribution of cocaine, which they obtained from a supplier named Rodolfo Fernandez. Although Mohler left the conspiracy in 1988 to start his own operation, Fernandez continued to supply Robert and Karen Long with cocaine. In early 1992, Mohler and his source, Juan Sierra, replaced Fernandez as the Longs' cocaine supplier. The Longs continued to distribute cocaine until

search warrants were executed in the summer of 1995.

Nearly all of the 31 defendants indicted in this case pleaded guilty or were dismissed. The four remaining defendants, Robert Long, Mark Ross, Rodolfo Fernandez, and Stivi Nechovski, were tried together after the district court denied motions for severance filed by Long and Fernandez. All four defendants were charged in the cocaine conspiracy count. In addition, Mark Ross was charged with two counts of money laundering and one count of conspiracy to commit money laundering. Robert Long was charged with the 26 offenses recited above. The jury acquitted Nechovski, but convicted Fernandez, Long, and Ross on all counts. Robert Long was sentenced to 360 months' imprisonment on the drug charges, including the CCE charge; 240 months on the money laundering charges; and 48 months on the charge of using of a communication facility, with the sentences on all counts to run concurrently. This appeal followed.

## II.

### A. Sufficiency of Evidence to Support CCE Conviction

▮ Defendant does not challenge the sufficiency of the evidence to support his conviction on any of the charges, except for his conviction for engaging in a continuing criminal enterprise (CCE). In order to sustain a conviction for engaging in a CCE, the government must prove (1) a felony violation of a federal narcotics law; (2) as a part of a "continuing series of

---

subject to reinstatement if the CCE conviction was reversed. *See Rutledge v. United States,* 517 U.S. 292, 298, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996) (drug conspiracy is lesser included offense of CCE such that conviction for both is cumulative or multiple punishment not authorized by Congress); *United States v. Avery,* 128 F.3d 966, 971 (6th Cir.1997); *United States v. Ward,* 37 F.3d 243, 247 (6th Cir.1994) (having vacated CCE conviction, conspiracy conviction reinstated). The jury also rendered a verdict against Long on count

102 for forfeiture of $860,000 in assets, which is not at issue in this appeal.

2. Karen Climer Collins Long will be referred to as Karen Long, although she did not marry Robert Long until 1990. Without giving a recitation of the interrelationships between most of the defendants, we note that the conspiracy to distribute cocaine was built largely upon the extended family and friends of Karen Long.

violations" of federal drug laws; (3) "in concert with five or more persons"; (4) for whom defendant is an organizer, supervisor, or manager; and (5) from which he derives substantial income or resources. *See* 21 U.S.C. § 848(c). Long contends that the government failed to prove he acted in concert with five or more persons for whom he was an organizer, supervisor, or manager. Rather, Long claims that the evidence showed, at most, that he was a supervisor or manager of three other conspirators; Robert Camero, Marilyn Ross, and Donald Ross.

██ We have held that merely proving that the individuals had a buyer-seller relationship with the defendant is not sufficient to support a conviction for engaging in a CCE. *See United States v. King*, 169 F.3d 1035, 1042 (6th Cir.1999) (citing *United States v. Elder*, 90 F.3d 1110, 1122–23 (6th Cir.1996)). The relationship requirement is flexible, however, such that the defendant's relationship with the five other individuals need not exist at the same moment, those individuals need not have a relationship with one another, and they may have different roles in the criminal enterprise. *See United States v. English*, 925 F.2d 154, 157 (6th Cir.1991). In addition, the defendant need not have had personal contact with these individuals as long there is evidence that they were involved with the defendant and not independent of his control. *See King*, 169 F.3d at 1042 (citing *United States v. Ward*, 37 F.3d 243, 250 (6th Cir.1994)). A broker or courier under the defendant's direction, someone who stores drugs for the defendant, or one who collects or launders drug proceeds, would have sufficient relationship under the statute. *See United States v. Ward*, 37 F.3d 243, 247 (6th Cir.1994).

██ Disavowing managerial control or supervision of Karen Long's family and friends, Robert emphasizes evidence that Karen kept track of the money and gave day-to-day direction to her family members with respect to quantities and prices for the cocaine. The fact that Karen was a supervisor and was the one who gave direction to some of the distributors does not negate the evidence that Robert also was an organizer, supervisor, and manager of these individuals. There was evidence that, although suppliers and participants changed, Robert and Karen Long were principals in the conspiracy from the late 1980s until the end. They directed and paid others to transport and deliver cocaine, store and package cocaine, distribute cocaine to their customers, collect money, and launder money. Karen Long testified that she and Robert were in business together, made decisions together, and, while she usually was the one who had contact with her family members, Robert was often in the background. Karen denied "calling the shots" and said she would "ask Bob first." Robert Long paid the couriers who traveled to Florida to get cocaine from their supplier. Charles Sullivan, Sr., testified that he made several trips to Florida to transport cocaine and money for Robert Long. Sally and Lonnie Huff transported cocaine from Florida and stored it in their home. Robert showed Sally how to measure and package a shipment of cocaine for distribution. Before Camero, Marilyn Ross, and Donald Ross became the principal distributors for the Longs, distribution was handled by Sullivan, Medreth and Donald Mohler, Sr., and Bill and Carolyn Climer.

 In determining the sufficiency of the evidence, we must "refrain from independently judging the credibility of witnesses or the weight of the evidence." *United States v. Welch*, 97 F.3d 142, 148 (6th Cir.1996), *cert. denied*, 519 U.S. 1134, 117 S.Ct. 999, 136 L.Ed.2d 879 (1997). We find that the evidence taken in the light most favorable to the government was sufficient to lead a rational trier of fact to find beyond a reasonable doubt that Robert acted in concert with at least five individuals for whom he acted as an organizer, supervisor, or manager. *See Jackson v.*

*Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).[3]

## B. Severance

 The decision to deny a motion for severance and separate trial rests within the wide discretion of the district court and will not be reversed absent an abuse of discretion. *See United States v. Moore,* 917 F.2d 215, 219 (6th Cir.1990). There is a preference for joint trials of defendants who are indicted together in accordance with Fed.R.Crim.P. 8(b) in order to promote efficiency and avoid inconsistent verdicts. *See Zafiro v. United States,* 506 U.S. 534, 537, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). Defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials. *Id.* at 540, 113 S.Ct. 933. Even "[m]utually antagonistic defenses are not prejudicial per se." *Id.* at 538, 113 S.Ct. 933. The district court should grant severance to properly joined defendants "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539, 113 S.Ct. 933.

 Robert Long's motions for severance before and during trial were denied.

Conceding that joinder was proper, Robert Long argues that severance should have been granted because joint trial with Mark Ross, his former attorney and alleged co-conspirator, compromised specific trial rights and prevented the jury from making a reliable judgment. Specifically, Mark Ross admitted his own violations of drug laws and currency reporting requirements, which implicated defendant, and received potentially privileged information during his earlier representation of defendant. The fact that the testimony of Mark Ross was inculpatory, rather than exculpatory, is simply not a basis for requiring severance. Defendant's heavy reliance upon our decision in *United States v. Breinig,* 70 F.3d 850 (6th Cir.1995), is misplaced.[4]

Mark Ross denied that he knew about the scope and extent of the conspiracy before the search warrants were executed in July and August 1995, but did not deny that there was a conspiracy. Ross admitted receiving a small quantity of cocaine from Long on three occasions, but asserted the attorney-client privilege before making that admission. While Long claims the assertion of the privilege lent more credibility to the testimony, it was cumulative of other uncontradicted testimony that cocaine was provided to Mark Ross. Mark Ross also testified that he received $60,000 in cash from Robert and

**3.** Just before oral argument, defendant raised a new claim of error based upon the Supreme Court's decision in *Richardson v. United States,* —— U.S. ——, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999), which resolved a circuit split and held that a jury must *unanimously* agree on which violations constitute the series of three or more violations required to prove a defendant engaged in a CCE. Long suggests that the district court erred by failing to instruct the jury that it must unanimously agree upon each of the violations. Not only did defendant fail to object to the instructions in the district court, but the Supreme Court has made clear that the omission of an element of an offense from a jury instruction is subject to harmless error analysis. *See Neder v. United States,* —— U.S. ——, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). In this case, the error was clearly harmless as the jury also unanimously found him guilty of more than three drug violations committed in the course of the

ongoing conspiracy to distribute cocaine. *Cf. United States v. King,* 169 F.3d 1035, 1040–41 (6th Cir.1999) (need not decide whether unanimity instruction required because any error harmless since defendant was convicted by the same jury of all of the predicate offenses, which were clearly related to one another).

**4.** In *Breinig,* the defendant was tried jointly with his ex-wife on charges of tax evasion and she was acquitted. Prejudice requiring reversal resulted from highly inflammatory evidence of the defendant's bad character, including evidence that he was adulterous, mentally abusive, and manipulative, which would not have been admissible in a separate trial. We also noted that it was an "exceptional case" and in very few instances would a conviction be reversed for denial of severance.

Karen Long, which he kept in a desk drawer and failed to disclose to the grand jury. Ross admitted he did not file currency transaction forms concerning the money. Defendant claims this evidence was prejudicial since the jury could infer he was guilty because he paid so much in attorney fees. Defendant offers no basis for concluding that it costs more in attorney fees if one is guilty than if one is innocent. Moreover, we are not persuaded that it would either compromise a specific trial right or prevent the jury from making a reliable judgment about his guilt or innocence.

As further grounds for reversal, defendant claims that Mark Ross revealed information protected by the attorney-client privilege by testifying that he "got cocaine from Bob, so, then, it wouldn't take a rocket scientist to know that they [were] somehow involved in that." The delivery of cocaine to Ross simply did not involve confidential client communications and was not privileged. Moreover, Ross actually denied knowing that the Longs were trafficking in drugs, but admitted that Robert Long said he got cocaine "on occasion."

 Mark Ross was asked about what assets had been disclosed by Robert Long in pleadings related to his divorce. While this testimony undermined Long's defense that he had significant assets that were not related to drug trafficking, it was a matter of public record, not privileged communications. Mark Ross also explained that he represented Robert and Karen Long as well as other family members on discrete matters, commenting that Pamela (Karen's

daughter from a previous marriage) was "a little red-neck who was always getting into trouble." The comment about Pamela did not unfairly prejudice defendant, who was on trial for significant drug offenses. In recounting the matters for which he represented Robert, Mark Ross testified that he got Robert "out of jail on his wedding night." There was no objection and no further information suggesting why Robert was in jail on his wedding night. In light of the overwhelming evidence against Robert Long, any error from this reference was harmless.[5]

## C. Prosecutorial Misconduct

 We review the district court's denial of a mistrial for abuse of discretion. *See United States v. Chambers*, 944 F.2d 1253 (6th Cir.1991). Generally, a criminal conviction is not to be lightly overturned on the grounds of a prosecutor's statements alone, as the comments or conduct must be viewed in context. *See United States v. Cobleigh*, 75 F.3d 242, 247 (6th Cir.1996). We adopted a two-part test for determining whether prosecutorial misconduct warrants a mistrial in *United States v. Carroll*, 26 F.3d 1380 (6th Cir.1994). First, we determine whether the prosecutor's conduct or comments were improper. Second, we determine whether the impropriety amounts to reversible error either as a "flagrant" impropriety under *United States v. Leon*, 534 F.2d 667 (6th Cir.1976), or because a new trial is required under *United States v. Bess*, 593 F.2d 749 (6th Cir.1979). *See United States v. Wiedyk*, 71 F.3d 602, 607–08 (6th Cir.1995).

---

5. While Robert Long attempted to adopt the arguments of the other defendants whose appeals were consolidated for hearing, only those arguments which are fully applicable to him may be incorporated by reference under Fed.R.Crim.P. 28(i). Rodolfo Fernandez argued that the joint trial with Mark Ross resulted in impermissible spillover evidence when Ross offered an expert witness to testify that a criminal defense attorney has a duty to advise his clients not to talk with law enforcement investigators. An attorney testified that a criminal defendant has a constitutional right to remain silent, cannot be compelled to give evidence against himself, and should be advised not to talk to investigators. Defendants moved for a mistrial, but did not request any curative instruction. If anything, the testimony reinforced that the defendants have a constitutional right not to testify and that advice not to talk to investigators was an extension of that right. This did not result in prejudicial spillover of evidence. *Cf. United States v. Elder*, 90 F.3d 1110, 1120 (6th Cir. 1996).

After several days of examination and cross-examination of Karen Long, the government asked on redirect about the plea agreement which Karen hoped would result in a motion for downward departure for substantial assistance. *See* U.S. SENTENCING GUIDELINES MANUAL § 5K1.1 (1995). Karen Long had been cross-examined at length about her motives for testifying and her understanding about whether the government would move for downward departure. Although Robert Long refused to allow his counsel to cross-examine Karen because he did not want to "put her through any more," she was subject to extensive cross-examination by counsel for his co-defendants. On re-direct examination, the prosecutor asked or commented as follows:

> Q: Right here and now, Mrs. Long, you are here testifying before this jury, and I am telling you right now, as far as your 5K motion is concerned, as far as any concerns about perjury or anything else, no repercussions are going to happen to you —
>
> MR. RABIN: Objection, absolutely improper. I have a motion to make.
>
> MR. WILLIAMS: Object.
>
> MR. TYACK: Objection.
>
> MR. WOLMAN: Objection.
>
> THE COURT: Sustained.

The defendants' requests for a mistrial were denied and no curative instruction was requested or given. The government claims on appeal that this partially asked question, although not "artfully phrased," was intended to reiterate that the only thing Karen Long had been asked to do was tell the truth.

The partial statement, as made, suggested the prosecutor might be vouching for the truthfulness of the witness. It was interrupted by objections, which were sustained, and the jury was instructed at the end of the trial that statements by counsel were not evidence. This incomplete statement did not result in improper vouching for the credibility of the witness.

Even if improper, however, it was not flagrant misconduct under *Leon*, and it was not an impropriety requiring a new trial under *Bess*. The district court did not abuse its discretion in denying defendant's motion for mistrial.

### D. Ineffective Assistance of Counsel

We generally will not review an ineffective assistance of counsel claim on direct appeal, as such claims are more appropriately raised in a post-conviction motion under 42 U.S.C. § 2255 when an adequate record may be developed on the issue. *See United States v. Pruitt*, 156 F.3d 638, 646 (6th Cir.1998), *cert. denied*, — U.S. —, —, 119 S.Ct. 846, 1157, 142 L.Ed.2d 700, 143 L.Ed.2d 223 (1999); *United States v. Daniel*, 956 F.2d 540, 543 (6th Cir.1992). Recognizing this, defendant asks that we only address the issue if the record is sufficient to permit us to assess the merits of the claim. We believe that the record is not adequate to determine the issue on the merits and, therefore, decline to address the issue on direct appeal.

### E. Sentencing

The district court's findings of fact concerning the amount of drugs attributable to the defendant must be accepted by this court unless clearly erroneous. *See United States v. Ward*, 68 F.3d 146, 149 (6th Cir.1995). The district court must set forth the evidence upon which it relies and make specific findings that are supported by a preponderance of the evidence. *See United States v. Baro*, 15 F.3d 563, 569 (6th Cir.1994). When the amount of drugs is uncertain, the district court must "err on the side of caution" to ensure that a defendant is actually more than likely responsible for a quantity greater than or equal to the amount used in the calculation. *See United States v. Ferguson*, 23 F.3d 135, 142 (6th Cir.1994).

The base offense level for the CCE conviction (the most serious of the drug offenses) is determined from the quantity of

cocaine involved plus four levels, or 38, whichever is greater. *See* U.S.S.G. §§ 2D1.5 and 2D1.1. The district court determined, over defendant's objection, that the quantity involved in defendant's offense was more than 50 but less than 150 kilograms of cocaine, for a base offense level of 36, *see* U.S.S.G. § 2D1.1(c)(3), plus four levels, for a total of 40. Defendant argues that the district court erred in finding that the distribution of more than 50 kilograms of cocaine was reasonably foreseeable to him because it was based upon the unreliable testimony of Karen Long.

█ Karen was cross-examined concerning the quantities that she claimed were distributed by the organization and her efforts to minimize the amounts that would be attributed to the conspiracy. At the same time, Karen conceded that she never claimed the amount was less than 50 kilograms. The estimates provided by Karen Long during trial add up to about 63 kilograms of cocaine. There was evidence suggesting that this quantity was a conservative estimate, i.e., when a distributor for Mohler was arrested in 1993 he had records showing that the Longs received seven kilograms in a two-month period rather than Karen's claim that they were receiving three kilograms every two months. There also was substantial evidence that Karen and Robert Long were in the cocaine business together.

The district court overruled defendant's objection, finding that the presentence report was consistent with the testimony at trial concerning defendant's participation in the drug conspiracy and that the amount of cocaine was in excess of 50 kilograms. The district court's finding that Robert Long was accountable for at least 50 kilograms of cocaine was supported by the evidence and was not clearly erroneous.

**AFFIRMED.**