NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0503n.06

Case No. 24-5430

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Oct 28, 2025

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| JEFFREY W. YOUNG, JR., | ) | |
|     Defendant-Appellant. | ) | O P I N I O N |
| | ) | |

Before: STRANCH, BUSH, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. Jeffrey Young, Jr. owned and operated a medical clinic that illegally distributed controlled substances to hundreds of patients. This appeal involves his prescribing activities to one of those patients: a woman to whom Young prescribed controlled substances six times during her pregnancy. A jury convicted Young of fifteen counts related to his prescription-drug scheme. Young filed a Rule 29 motion for acquittal on all counts and a motion to dismiss the verdict for lack of subject-matter jurisdiction. Young appeals the district court's decision to deny both motions. Specifically, he claims that the government did not sufficiently prove the six counts of distributing controlled substances to a pregnant woman and that the indictment did not allege a violation of 21 U.S.C. § 841(a) because Young was authorized within the meaning of the statute. We AFFIRM the district court's denial of both motions.

**I.**

*A.  Facts*

Young opened Preventagenix in North Jackson, Tennessee, in 2014.  At the time, he was a licensed nurse practitioner and was authorized by the Drug Enforcement Administration ("DEA") to prescribe Category II–V controlled substances.  Young initially marketed Preventagenix as a family medicine and preventive care clinic.  Over the next year, however, Preventagenix devolved into a pain management and addiction clinic.  Following this shift, its clientele ballooned nearly threefold.  Around eighty percent of patients—including those who failed drug tests and had histories of addiction—received controlled substance prescriptions.

Hope Rogers[1] became Young's patient in November 2014.  She sought treatment and pain relief for carpal tunnel syndrome, among other things.  Rogers had a history of substance abuse but did not consider herself to have an active addiction when she began seeing Young.  By the time she learned she was pregnant in February 2015, she had an active addiction as a result of Young increasingly prescribing controlled substances to her.  During Rogers's pregnancy, Young prescribed her controlled substances six times.  Rogers's daughter, born in August 2015, had opioids in her system and spent two weeks in the NICU.

*B.  Procedural History*

A grand jury indicted Young on fifteen counts.  Count 1 alleged that he conspired to distribute and dispense controlled substances from July 2014 through January 2017, in violation of 21 U.S.C. § 846.  Counts 2–7 alleged that Young unlawfully distributed and dispensed controlled substances to a pregnant woman on six occasions and aided and abetted others doing so

---

[1] The parties refer to Hope Rogers as "Rogers," although she stated at trial that she currently goes by Hope Arment. The government acknowledged this distinction in its brief, noting that it followed Young's naming convention.  We follow the parties' lead.

on specified dates from March to July 2015, in violation of 21 U.S.C. §§ 841(a), 861(f), and 18 U.S.C. § 2. Counts 8–14 alleged that he unlawfully distributed and dispensed controlled substances on specified dates from June to November 2016 and aided and abetted others doing so, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Count 15 alleged that Young maintained a drug-involved premises and aided and abetted others doing so from July 2014 to January 2017, in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2. Young pleaded not guilty on all counts, and trial commenced.

At trial, the government called twelve witnesses: three former Preventagenix employees, two former patients, Young's former supervising physician, two undercover officers, two investigators, and two expert witnesses. Young did not call any witnesses. Relevant to Counts 2–7, the government called Rogers and Tricia Aultman, M.D., an expert witness and internal medicine physician from Mississippi.

Rogers testified that her addiction worsened while she was in Young's care such that she was actively addicted to controlled substances when she discovered she was pregnant in February 2015. When Rogers requested an additional prescription or an increased dosage, Young repeatedly accommodated the requests. For example, Young prescribed a thirty-day supply of Percocet to Rogers on March 5, 2015. Twenty days later, he wrote her another prescription for Lortab at her request. Even as Young increased the dosages of her prescriptions, Rogers did not recall Young ever advising her of the risks associated with consuming opiates while pregnant. Rogers testified that a medical assistant at Preventagenix told her she was fired as a patient because a drug screen showed that her prescribed medications were not metabolized. Rogers explained that the medication failed to metabolize because she often tried to pass drug tests by adding medication to her urine in the bathroom. Despite this aberrant test result, Young declined to fire Rogers as a

patient and continued to write her prescriptions. During Rogers's pregnancy, Young wrote Rogers six prescriptions for hydrocodone and oxycodone.

Based on her expertise as an internal medicine physician, Aultman testified that each of the six prescriptions were without a legitimate medical purpose and not in the ordinary course of professional practice. She noted that the diagnoses in Rogers's chart were unlikely to provide a legitimate medical reason for the prescriptions because Young added the diagnoses with "no investigation." (Trial Tr. Day 4 (PM), R. 282, PageID 3905). She also explained that opioids "are not a drug of choice in pregnancy in any way" and should be used "only if absolutely necessary." (*Id.* at 3911). Aultman informed jurors that Young's prescriptions would have been "contraindicated" because of Rogers's pregnancy. (*Id.* at 3912). According to Aultman, the appropriate standard of care would have been to switch Rogers to methadone or Suboxone. She described Young's prescribing decisions as "not just bad medicine" but "harmful" because they put both Rogers and her unborn child at risk. (*Id.* at 3921).

The government questioned Aultman about a drug screen from April 29, 2015, which showed both hydrocodone and oxycodone in Rogers's system at a time when Rogers was not prescribed oxycodone. Aultman opined that Rogers was "clearly abusing, diverting, selling, doing something with her medicine" and that she was "not taking it in the prescribed manner." (*Id.* at 3924–25).

At the close of the government's case-in-chief, Young moved for judgment of acquittal on all counts. The district court denied the motion, and the jury found Young guilty of all fifteen counts. Young then filed a post-verdict motion to dismiss, arguing that the district court lacked subject-matter jurisdiction because Young was authorized to prescribe controlled substances under

§ 841(a). The district court also denied this motion and sentenced Young to 240 months in prison followed by six years of supervised release. Young timely appealed.

**II.**

On appeal, Young raises two claims: (1) the district court erred by denying his Rule 29 motion regarding the sufficiency of the evidence for Counts 2-7; and (2) the district court lacked subject-matter jurisdiction. We address each in turn.

*A. Sufficiency of the Evidence*

Young's sufficiency-of-the-evidence challenge is premised on his contention that the government failed to prove that his prescriptions to Rogers lacked a legitimate medical purpose and were issued outside the course of professional practice. We disagree.

We review de novo a Rule 29 challenge to the sufficiency of the evidence. *United States v. Robinson*, 99 F.4th 344, 353 (6th Cir. 2024). The key inquiry is whether "any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *United States v. Baggett*, 251 F.3d 1087, 1095 (6th Cir. 2001) (quoting *United States v. King*, 169 F.3d 1035, 1038–39 (6th Cir. 1999)). "[V]iewing the evidence in the light most favorable to the government," *id.*, we "draw all available inferences and resolve all issues of credibility in favor of the jury's verdict," *United States v. Jackson*, 470 F.3d 299, 309 (6th Cir. 2006) (quoting *United States v. Salgado*, 250 F.3d 438, 446 (6th Cir. 2001)). We will not "weigh the evidence presented, consider the credibility of witnesses, or substitute our judgment for that of the jury." *Id.* (quoting *United States v. Davis*, 177 F.3d 552, 558 (6th Cir. 1999)). A defendant challenging the sufficiency of the prosecution's evidence "bears a very heavy burden." *United States v. Emmons*, 8 F.4th 454, 478 (6th Cir. 2021) (quoting *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006)).

To convict a defendant under § 841(a)(1), "the government must show: '(1) That defendant distributed a controlled substance; (2) That he acted intentionally or knowingly; and (3) That defendant prescribed the drug without a legitimate medical purpose and outside the course of professional practice.'" *United States v. Anderson*, 67 F.4th 755, 769 (6th Cir. 2023) (quoting *United States v. Johnson*, 71 F.3d 539, 542 (6th Cir. 1995)); *see also United States v. Zayas*, 32 F.4th 211, 224 (3d Cir. 2022) (concluding that § 861(f) requires the government to prove "the defendant's knowledge of an individual's pregnancy").

The government presented ample evidence at trial that Young unlawfully distributed controlled substances to Rogers during her pregnancy. The bulk of Young's challenge pertains to the third prong in the analysis, but we briefly address the first two prongs.

*Distributed Controlled Substances.* The parties do not dispute that Young distributed controlled substances to Rogers. Both agree that Rogers was pregnant until August 2015, and that Young prescribed controlled substances to her six times throughout March, April, May, June, and July 2015.

*Acted Intentionally or Knowingly.* The parties also agree that Young knew Rogers was pregnant, as evidenced by a follow-up note in her chart that Young had learned Rogers was pregnant in February 2015. But Young contends that the government's evidence that he knowingly prescribed to Rogers without authorization was insufficient to support his conviction because he did not know the prescriptions "were for an illegal purpose." (ECF 47, Appellant's Br., 25). In the context of medical practitioners, when the evidence shows that a defendant dispensed controlled substances by issuing prescriptions, the government must prove that the defendant knew the prescriptions were unauthorized. *See Ruan v. United States*, 597 U.S. 450, 467 (2022). We rejected the notion that a practitioner's unreasonable subjective belief that he is "prescribing in an

'authorized' manner" is sufficient to establish that the practitioner lacks knowledge of authorization and therefore did not distribute controlled substances knowingly. *United States v. Suetholz*, No. 23-5613, 2024 WL 4182903, at \*3 (6th Cir. Sep. 13, 2024). Applying *Ruan* and *United States v. Bauer*, 82 F.4th 522 (6th Cir. 2023), we explained that "[c]ircumstantial evidence of knowledge of lack of authorization can also include expert testimony describing how far the defendant's practices deviated from the mainstream." *Suetholz*, 2024 WL 4182903, at \*3–4.

Here, the government presented circumstantial evidence that Young knowingly lacked authorization to prescribe controlled substances to Rogers. Specifically, Aultman testified as an expert witness that Young's prescriptions to Rogers were "[a]bsolutely not" within the ordinary course of professional practice for a legitimate medical purpose. (Trial Tr. Day 4 (PM), R. 282, PageID 3922). Aultman explained that Young departed from the standard of care for pregnant patients by failing to switch Rogers to methadone or Suboxone. *See Suetholz*, 2024 WL 4182903, at \*3 (affirming a § 841(a) conviction where the expert's testimony that Suetholz "frequently and sharply departed" from the standards of professional practice helped show that Suetholz "knew that his prescribing practices deviated from professional norms"). And text messages from Young to a friend, whose wife was also a patient, revealed Young stating that Xanax during pregnancy was a "definite no" because "[i]t would harm the baby." (Trial Tr. Day 4 (AM), R. 281, PageID 3839). This evidence further demonstrated that Young knew his conduct was outside the ordinary course of professional practice and therefore was unauthorized.

*Legitimate Medical Purpose and Course of Professional Practice.* At the core of his appeal, Young disputes that his prescriptions to Rogers had no legitimate medical purpose and were outside the course of professional practice. Instead, he insists that he was "free to treat his patients in the manner he fe[lt] [was] best for that individual patient." (ECF 47, Appellant's Br.,

26). But practitioners must mind the guardrails erected to avoid running afoul of § 841(a). And working within "'*accepted* limits' on prescribing" is one such guardrail. *Suetholz*, 2024 WL 4182903, at *3 (quoting *Ruan*, 597 U.S. at 467).

Based on Aultman's expert testimony combined with Young's own acknowledgment of the command against prescribing opioids to pregnant patients, a rational juror could conclude that Young did not prescribe hydrocodone and oxycodone to Rogers for a legitimate medical purpose and within the course of professional practice. *See United States v. Elliott*, 876 F.3d 855, 864 (6th Cir. 2017) (finding that the expert witness's testimony "offered additional evidence to distinguish [the physician's] actions from those of an ordinary doctor"). Aultman expressly stated that Young's six prescriptions to Rogers were not for a legitimate medical purpose and were outside the course of professional practice. She reviewed Rogers's chart and determined that several diagnoses were unlikely to provide a legitimate medical basis for Young's prescriptions because Young performed "no investigation" before listing the diagnoses. (Trial Tr. Day 4 (PM), R. 282, PageID 3905). Aultman further opined that opioids "are not a drug of choice in pregnancy in any way" and should be used "only if absolutely necessary." (*Id.* at 3911). She noted that a prescription for opioids would have been "contraindicated" and classified Young's decisions as "not just bad medicine" but "harmful." (*Id.* at 3912; 3921). Jurors were free to accept Aultman's opinion as proof that Young's prescribing activities lacked any legitimate medical purpose.

A rational juror also could find that Young disregarded signs that Rogers was abusing her prescriptions and therefore acted outside the course of professional practice by continuing to issue new prescriptions without adhering to compliance protocols. *See Anderson*, 67 F.4th at 769 (sustaining a § 841(a) conviction where an expert witness examined patient files and found that, among other shortcomings, the physician failed to enforce compliance measures).

Aultman testified that Rogers was "clearly abusing, diverting, selling, doing something with her medicine" and that she was "not taking it in the prescribed manner." (Trial Tr. Day 4 (PM), R. 282, PageID 3924–25). On this topic, Aultman discussed the import of Rogers's April 29, 2015, positive drug screen for hydrocodone and oxycodone. Aultman explained that because Young had not prescribed oxycodone to Rogers at that time, he should have known that this was an aberrant result. Yet, rather than probing Rogers as to the reasons for the result, he wrote her more prescriptions in May, June, and July 2015. Rogers recalled one instance in which a medical assistant attempted to fire Rogers as a patient because Rogers had inconsistent test results. But Young retained Rogers as a patient, wrote her additional prescriptions, and increased the dosages. *See United States v. Chaney*, 921 F.3d 572, 591 (6th Cir. 2019) (affirming a § 841(a) conviction where a physician increased his patient's prescription after a drug screen was negative for the prescribed medications).

Another clue that Young acted outside the course of professional practice in prescribing to Rogers was the fact that Rogers suffered from active addiction. *See United States v. Romano*, No. 24-3463, 2025 WL 2061204, at *4 (6th Cir. July 23, 2025) (rejecting a sufficiency-of-the-evidence challenge because Romano prescribed high doses of opioids to patients with "signs of addiction"). Rogers testified that she was actively addicted to controlled substances while she was Young's patient, and this addiction worsened as Young increased her dosages. For example, Young wrote Rogers a thirty-day prescription for Percocet on March 5, 2015, and, 20 days later, wrote her another prescription for Lortab when she requested additional medication. And these increases in her dosages were not accompanied by any advice from Young about the risks associated with taking opiates while pregnant, including that infants can be addicted to opiates at birth. *See id.*

(upholding a § 841(a) conviction where a physician did not "adequately warn his patients about the serious risks of the drugs").

The crux of Young's counterarguments—that his prescriptions to Rogers were "monitored and accepted by independent third-party physicians"—is unavailing. (ECF 47, Appellant's Br., 19). The jury was free to find that another practitioner's knowledge and acceptance of Young's prescription-writing practices to Rogers did not outweigh the substantial evidence that he meaningfully veered away from professional standards of care. Moreover, the facts underlying Young's counterarguments are unfounded. First, he suggests that he merely continued dispensing medications that Rogers's previous physician had prescribed. But Aultman testified that her review of the records revealed that at Rogers's first visit, Young discontinued a low-level opioid, started Rogers on hydrocodone, and increased the Klonopin dosage. And he did so "with no clear reason[.]" (Trial Tr. Day 4 (PM), R. 282, PageID 3908).

Next, Young claims that Rogers's obstetrician was aware of the medications that Young prescribed to her. Young points to Rogers's testimony that she could not recall any physician informing her of the risks associated with the medications. Nevertheless, as Young acknowledges, Rogers also testified that her obstetrician advised her to stop taking prescription medications. And this point buttresses the jury's conclusion that prescribing these opiates during pregnancy falls outside the ordinary course.

Based on the foregoing, the district court did not err in denying Young's Rule 29 motion.

*B. Subject-Matter Jurisdiction*

Young also challenges the district court's exercise of subject-matter jurisdiction over his case. The district court denied his motion to dismiss, reasoning that *United States v. Moore*,

423 U.S. 122 (1975), and *Gonzales v. Oregon*, 546 U.S. 243 (2006), established that Young could be prosecuted under § 841(a). We agree.

On appeal, Young appears to advance a four-part argument: (1) Young was "authorized" to prescribe controlled substances pursuant to § 841(a) because he was registered with the DEA; (2) the Attorney General must rely on *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), or *Auer v. Robbins*, 519 U.S. 452 (1997), to apply the conditions of "legitimate medical purpose" and "usual course of his professional practice" in 21 C.F.R. § 1306.04 to § 841(a); (3) the Attorney General failed to follow the Administrative Procedure Act in promulgating § 1306.04; and (4) *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), overturned *Chevron* thereby eliminating the government's ability to indict Young under § 841(a). Because Young's status as a registrant does not exempt his conduct from the purview of § 841(a), we need not reach his remaining arguments.

We review de novo questions of subject-matter jurisdiction. *United States v. Bacon*, 884 F.3d 605, 608 (6th Cir. 2018). Challenges to subject-matter jurisdiction "involve[] a court's power to hear a case, [and] can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). A district court lacks subject-matter jurisdiction if "the face of the indictment failed to charge the elements of a federal offense." *Bacon*, 885 F.3d at 609 (quoting *United States v. Martin*, 526 F.3d 926, 934 (6th Cir. 2008)). "[A]n indictment is sufficient if it . . . contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend[.]" *United States v. Anderson*, 605 F.3d 404, 411 (6th Cir. 2010) (first alteration in original) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). "[I]n a prosecution under the Controlled Substances Act, the Government need not refer to a lack of authorization . . . in the criminal indictment." *Ruan*, 597 U.S. at 462 (holding that a defendant first must meet his burden

of demonstrating that his conduct was "authorized" before the burden shifts to the government to prove *mens rea*).

*Section 841(a) Permits the Government to Prosecute Young.* The government argues that *Moore* forecloses Young's appeal. Young does not address *Moore*. If Young desired to argue that *Moore* is abrogated or inapplicable to his case, he "presumably would have briefed the issue in [his] reply," after he received the government's response relying on *Moore*. *L.D. Mgmt. Co. v. Gray*, 988 F.3d 836, 841 (6th Cir. 2021).

*Moore* squarely governs this case. In *Moore*, the Supreme Court held that "only the lawful acts of registrants are exempted" from prosecution under § 841. 423 U.S. at 131. The Court rejected the possibility that a physician registered under the Controlled Substances Act ("CSA") was "per se exempted from prosecution under § 841 because of his status as a registrant." *Id.* Consistent with *Moore*, Young's conduct is punishable under § 841(a) because he "exceeded the bounds of 'professional practice.'" *Id.* at 142–43 (highlighting Moore's failure to perform physical examinations, administer methadone, prevent abuse of prescriptions, regulate dosages, and charge based on services provided instead of the number of drugs requested).

*Chevron and Auer Deference are Inapplicable.* Though the district court lacked the foresight of *Loper Bright* when it denied Young's motion to dismiss, we need not address Young's argument that *Chevron* or *Auer* deference are required to rely on § 1306.04. The Court in *Moore* did not depend on 21 C.F.R. § 306.04 (1973) to determine the bounds of § 841. Instead, the Court held that both the "scheme" of the CSA and its legislative history "reveal[] an intent to limit a registered physician's dispensing authority to the course of his 'professional practice.'" *Moore*, 423 U.S. at 140. Similarly, in *Gonzales*, the Court rejected the government's attempts to rely on *Auer* deference to interpret § 1306.04. 546 U.S. at 257. The Court reasoned that § 1306.04 "just

repeats two statutory phrases and attempts to summarize the others" included in the CSA. *Id.* "An agency does not acquire special authority to interpret its own words when, instead of using its expertise and experience to formulate a regulation, it has elected merely to paraphrase the statutory language." *Id.* Here, regardless of the validity and applicability of § 1306.04 to § 841(a), the district court had subject-matter jurisdiction to decide Young's case. The government's indictment sufficiently alleged that his conduct fell outside the usual course of professional practice under *Moore*.

Given the foregoing, the district court did not err in denying Young's motion to dismiss.

**III.**

For the reasons discussed, we AFFIRM.