**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                                          No. 97-4866

CHARLES WESLEY HELEM,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Malcolm J. Howard, District Judge.
(CR-97-33)

Argued: May 7, 1999

Decided: July 28, 1999

Before MURNAGHAN and LUTTIG, Circuit Judges,
and WILLIAMS, Senior United States District Judge
for the Eastern District of Virginia,
sitting by designation.

_____

Affirmed by published opinion. Senior Judge Williams wrote the
opinion, in which Judge Murnaghan and Judge Luttig joined.

_____

**COUNSEL**

**ARGUED:** George Alan DuBois, Assistant Federal Public Defender,
Raleigh, North Carolina, for Appellant. Yvonne Victoria Watford-
McKinney, Assistant United States Attorney, Raleigh, North Caro-
lina, for Appellee. **ON BRIEF:** William Arthur Webb, Assistant Fed-

eral Public Defender, Raleigh, North Carolina, for Appellant. Janice McKenzie Cole, United States Attorney, Anne M. Hayes, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

_____

**OPINION**

WILLIAMS, Senior District Judge:

This case presents the question whether physical violence that occurs before interstate travel begins can satisfy the "in the course or as a result of that conduct" requirement of 18 U.S.C. § 2261(a)(2), one of the provisions of the Violence Against Women Act ("VAWA"), enacted by Congress in 1994. It is a case of first impression in this circuit.

I.

This is a direct appeal by the defendant of a conviction and sentence following a trial in the United States District Court for the Eastern District of North Carolina. The defendant was named in a two-count indictment. Count One charged him with interstate domestic violence in violation of 18 U.S.C. §§ 2261(a)(2) and 2261(b) and Count Two charged him with kidnaping in violation of 18 U.S.C. § 1201(a). He pled not guilty to the charges and the case proceeded to trial. He was acquitted of the kidnaping charge but found guilty of interstate domestic violence.

The defendant appeals his conviction, claiming that his conviction must be reversed because the evidence was undisputed that he did not commit any act of violence against his wife during the course of a trip from Maryland to North Carolina and because, by its plain language, the offense of interstate domestic violence, 18 U.S.C. § 2261(a)(2), does not reach acts of violence that occur before interstate travel begins. Alternatively, he claims that his conviction must be reversed because the court's instructions failed to adequately explain this element of the offense to the jury. He also claims that the court erred when it refused his request that it instruct the jury that consent of the victim was a defense to section 2261(a)(2).

2

II.

The district court had jurisdiction over this case under 18 U.S.C. §§ 3231, 2261(a)(2), 2261(b), and 1201(a). The court entered a final order in this case on October 28, 1997. The defendant filed a timely notice of appeal on October 29, 1997. We have jurisdiction under 28 U.S.C. § 1291.

III.

Denise Custis Helem and the defendant, Charles Helem, were married approximately one month after meeting in 1996. They lived in an apartment in Laurelton, Maryland. During their marriage, the defendant beat his wife four times. After a beating in December 1996, Denise Helem left the apartment, staying first with her mother and then with her sister. During this time, the couple sought counseling for the defendant's problem with anger.

On March 24, 1997, Denise Helem returned to the apartment to talk with the defendant and to pack her things. While she was packing, the defendant arrived. While they were talking, a police officer called to arrange to serve Denise Helem with a criminal summons for second degree assault on a complaint that the defendant filed against her. When the officer served her, Denise Helem learned that the defendant had falsely accused her of assaulting him with a knife and threatening to kill him. After the officer left, she completed her packing, called her sister to say that she was on her way back to her sister's home, and walked toward the door to leave. The defendant grabbed his wife from behind in a choke hold with such force that he lifted her off the floor. He jerked her, pulled her into the bedroom, and continued choking her. He then flung her across the floor, causing carpet burns on her arms, smiling as he did so. He then came down on top of her, started choking her again, and stated, "You're not going anywhere. You're not going to meet anybody. You're going to meet your sister, and you're going to meet your daughter." These were references to another sister and Denise Helem's daughter, both of whom were deceased. The defendant then began striking his wife in the face and she lost consciousness. When she regained consciousness, he resumed choking her and accusing her of not loving him, until she stated that she did love him.

3

When he released her, she crawled over to a mirror and then poured water on her face, which was covered in blood. The defendant then began to ask his wife's forgiveness. He picked her up and carried her into the living room, giving her a pad and pen to communicate because she was barely able to speak. Denise Helem was afraid that the defendant would resume beating her or would kill her. She encouraged him to pray.

The defendant told his wife that they had to leave because no one could see her in her current condition. She responded, "I don't care," out of fear that if she said anything different the beating would resume. When the defendant asked her if she wanted to go south, she again wrote, "I don't care." He packed his clothes and loaded them and some camping gear into his car. He packed nothing for his wife. He then helped her into the car and began to drive south.

As they drove, Denise Helem was weak, in pain, and could barely see. She was also unable to speak because of the condition of her throat. She communicated by writing on the pad. During the drive, she wrote that she was hurting, that she needed to lie down, and that her stomach, lungs, and throat hurt. The defendant stopped in Virginia and got his wife some tea. She was unable to move and was in and out of consciousness. While he was in the store, she tried unsuccessfully to get the attention of a man in a uniform. The defendant returned to the car and drove until they eventually reached Fayetteville, North Carolina, where they stopped at a rest stop. After checking into one motel in Lumberton, North Carolina and discovering it to be dirty, they registered at a nearby Days Inn.

Denise Helem awoke, coughing blood. He asked her if she wanted to go to the hospital and she responded that she did. He took her to the emergency room of Southeastern Regional Medical Center. He told medical personnel that his wife had been in a car accident and told his wife to "work with me," which she understood to mean that he was going to do the talking and she was to go along with his story. He answered all the questions put to her by the physician's assistant (PA). He remained within several feet of her and was described as "hovering" over her.

The PA's examination revealed multiple bruises, two blackened eyes, subcutaneous capillary breakages under the right eye on the

4

cheek bones; blood in the white parts of both eyes, two linear bruises on the front of her neck in which there were imprints of small chains, abrasions over both elbows, and four scratches and small circular bruises on the right upper arm. The defendant told the PA that his wife had fallen down some steps. The x-rays showed that Mrs. Helem sustained bi-lateral fractures of both cheekbones.

When Mrs. Helem was moved to radiology, the defendant became agitated. While in a bed in the emergency room, Mrs. Helem slipped the note on which she had previously written a plea for help into the PA's pocket. She later told a nursing assistant that the doctor should look in his pocket. When he could not find the note, the PA informed her and she became distraught and agitated. She then told the PA what the defendant had done to her. The PA called the police and the defendant was arrested. He was subsequently charged in a two-count indictment as described above.

Prior to the trial, the defendant submitted the following proposed instruction on consent as a defense to the charge of interstate domestic violence:

> The consent of Denise Helem to accompany Charles Helem in interstate travel constitutes a complete defense. If you find that Denise Helem consented at any time to accompany Charles Helem before they traveled from the State of Maryland, there would not be the [crimes charged] or [crime of kidnaping]. The defendant does not have the burden of proving anything to you. He therefore does not have the burden to prove consent before interstate travel. It is the government which must prove to you, by competent evidence and beyond a reasonable doubt, that Denise Helem did not consent to accompany Charles Helem before interstate travel.

J.A. at 31 (brackets in original).

The district judge, however, instructed the jury as follows:

> Title 18 United States Code section 2261(a)(2), a federal law, makes it a federal crime for anyone to cause a spouse

5

or intimate partner to cross a state line by force, coercion, duress, or fraud and in the course of, or as a result of that conduct to intentionally commit a crime of violence and thereby cause bodily injury to this spouse or intimate partner. In order to find a Defendant guilty of interstate domestic violence, you must be convinced that the Government has proved beyond a reasonable doubt each of the following four elements. One, that the Defendant, Mr. Helem, and Denise are spouses or intimate partners. Second, that the Defendant caused Denise to cross a state line by force, coercion, duress, or fraud. Third, that in the course of or as a result of that conduct, the Defendant intentionally committed a crime of violence upon Denise Custis Helem; and finally the fourth element, and that as a result of this crime of violence, Denise was bodily injured. Now those are the four elements, and each of them must be satisfied to you beyond a reasonable doubt. The term coercion and duress, coercion and duress are interchangeable. Coercion or duress exists when an individual is subject to actual or threatened force of such a nature as to induce a well-founded fear of impending death or serious bodily harm from which there is no reasonable opportunity to escape. Under this law, bodily injury means any act except one done in self-defense, that results in physical injury or sexual abuse. The term crime of violence means an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another or conduct which by its nature presents a serious potential risk of physical injury to another. Crime of violence includes kidnaping or aggravated assault. Now that concludes the explanation of this Count One, interstate domestic violence.

J.A. at 346-48.

The court did not specifically instruct the jury that consent is a defense to interstate domestic violence but did specifically instruct the jury on the consent defense to the kidnaping charge. J.A. at 31, 349. In addition, the defendant submitted an instruction on interstate domestic violence that requested that the jury be required to find that the violent act took place at or near the time of crossing the state line.

6

J.A. at 30, 357. The court denied the defendant's objections to the charge given, stating that it was satisfied that the instructions given were consistent with prevailing law. J.A. at 360.

The defendant was acquitted of the kidnaping charge but found guilty of interstate domestic violence.

IV.

Helem advances three arguments in support of his claim that his conviction must be reversed. First, he argues that the offense of interstate domestic violence, 18 U.S.C. § 2261(a)(2), does not reach acts of violence that occur before interstate travel begins. Second, and alternatively, he claims that his conviction must be reversed because the court's instructions failed to adequately explain this element of the offense to the jury. Third, he claims that the court erred when it refused his request that it instruct the jury that consent of the victim was a defense to section 2261(a)(2).

Questions of statutory interpretation are reviewed on appeal de novo. United States v. Mitchell, 39 F.3d 465, 468 (4th Cir. 1994), cert. denied, 515 U.S. 1142 (1995). To the extent the parties raise sufficiency of the evidence as an issue, "[t]he verdict of [the] jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942). Decisions as to whether to give an instruction and the content of any jury instruction are reviewed for abuse of discretion. United States v. Stotts, 113 F.3d 493, 496 (4th Cir. 1997).

A.

Title 18 United States Code section 2261(a)(2) provides:

> (2) Causing the crossing of a State line. -- A person who causes a spouse or intimate partner to cross a State line or to enter or leave Indian country by force, coercion, duress, or fraud and, in the course or as a result of that conduct, intentionally commits a crime of violence and thereby causes bodily injury to the person's spouse or intimate partner, shall be punished as provided in subsection (b).

7

18 U.S.C. § 2261(a)(2) (emphasis added). Each side argues that the plain language of the statute supports its view. The defendant argues that the act of violence must occur during or after the interstate travel. The government argues that the phrase "that conduct" refers not simply to interstate travel, but to interstate travel induced by force, coercion, duress or fraud. The government further argues that the phrase "in the course or as a result of" is much broader than the phrase "during or after" which Congress could have chosen to use but did not.

The Sixth Circuit, sitting en banc, recently addressed the scope of section 2261(a)(2). In United States v. Page, 167 F.3d 325 (6th Cir. 1999), an equally divided court affirmed the appellant's conviction and sentence. Judge Moore, in a well-reasoned opinion in which seven other members of the court joined, examined the text and legislative history of section 2261.

First, as she points out, "the neighboring statutes [within the VAWA] demonstrate that Congress knew how to say in the course of `travel' when it wanted to." Page, 167 F.3d at 329. Title 18 United States Code sections 2261A (interstate stalking) and 2262 (interstate violation of protection order), along with section 2261, all require interstate travel as an element of each crime, but only sections 2261(a)(2) and 2262(a)(2) involve forcing another person to cross state lines. Sections 2261 and 2262 are parallel and subsections (a)(1) of each section prohibit interstate travel with the intent to commit domestic violence or violate a protection order, respectively. In these two provisions and in § 2261A, which prohibits interstate travel with the intent to injure or harass another person, coverage is clearly limited to violence or harassment that occurs during or after interstate travel. These three sections refer to actions that occur "in the course of or as a result of such travel" or "subsequent[ ]" to interstate travel. See 18 U.S.C. §§ 2261(a)(1), 2261A, and 2262(a)(1)(B). In contrast, as Judge Moore notes, subsections (a)(2) of both section 2261 and section 2262 address causing another to travel -- specifically, causing a spouse or intimate partner to cross a state line by force, coercion, duress, or fraud -- and only these two subsections refer to "that conduct." The drafting history of sections 2261 and 2262 also supports this distinction and demonstrates that it is not accidental. See Page, 167 F.3d at 330. The drafting history also shows that the statute, as

8

originally proposed in 1990, stated that the "act that injures" must occur "during the course of any such travel or thereafter," S. Rep. No. 101-545 at 53 (1990), while the statute as enacted provides that the "crime of violence" must occur "in the course or as a result of that conduct." This change demonstrates again that Congress intentionally chose words and phrases that would <u>not</u> restrict this statute to conduct that occurred during or after interstate travel.

The rule of lenity, which requires the court to strictly construe criminal statues, does not apply in this case because the statute is not ambiguous. <u>United States v. Lanier</u>, 117 S.Ct. 1219, 1225 (1997). The Supreme Court recently noted that "[t]he simple existence of some statutory ambiguity is not sufficient to warrant application of that rule [of lenity], for most statutes are ambiguous to some degree." <u>Muscarello v. United States</u>, 118 S.Ct. 1911, 1919 (1998).

As Judge Moore described in the <u>Page</u> case, the defendant's conduct, as presented to the jury, falls within the scope of § 2261(a)(2) under at least two theories of liability. The evidence showed that Helem committed interstate domestic violence both (1) when, by beating his wife into a state of semi-consciousness, he was enabled to and did force her across state lines against her will in an attempt to evade the law, and (2) when he forced her travel across state lines under threat of violence, intentionally preventing her from obtaining medical treatment, thereby exacerbating her injuries.

The crime of violence that occurred inside the apartment enabled Charles Helem to force Denise Helem across state lines. The beating rendered her unable to resist him physically and frightened her so that she responded "I don't care" to his questions, out of fear the beating would resume. The beating also allowed Helem to retain control over her during the forced transportation. Consequently, the beating that took place inside the apartment occurred "in the course of" Helem forcibly "causing" Denise Helem to "cross a State line." In addition, the evidence showed clearly that Helem removed her from Maryland because he did not want anyone to see her in that condition, knowing the possible consequences for himself and knowing that interstate travel would make it more difficult for law enforcement to hold him liable for this crime. This situation is precisely the type of situation that the Violence Against Women Act was intended to cover. As

9

Judge Moore wrote, "To assume that Congress intended to criminal-ize only those beatings occurring precisely during travel but not those occurring inside a home that are integrally related to forcible inter-state travel would be to suggest that Congress somehow missed the boat." Page, 167 F.3d at 329. Accordingly, we hold that physical vio-lence that occurs before interstate travel begins can satisfy the "in the course or as a result of that conduct" requirement of 18 U.S.C. § 2261(a)(2).

The second theory of liability suggested in the Page opinion -- that when a defendant forces the victim to travel across state lines under threat of violence, intentionally preventing her from obtaining medical treatment, thereby exacerbating her injuries-- would also support a conviction under section 2261(a)(2) and, arguably, would apply in this case. However, since this theory of liability was not pre-sented to the jury and given our holding above, we do not reach this issue.

B.

Alternatively, Helem argues that his conviction must be reversed because the district judge's instructions failed to adequately explain this element of the offense to the jury. For the reasons stated above, no error was made by the district judge in instructing the jury on sec-tion 2261(a)(2). The court properly charged the jury that it must find "that in the course of or as a result of that conduct [that the Defendant caused Mrs. Helem to cross a state line by force, coercion, duress, or fraud], the Defendant intentionally committed a crime of violence upon Denise Custis Helem, . . . and that as a result of this crime of violence, Denise was bodily injured." J.A. at 347. The defendant's conduct satisfied these elements, and sufficient evidence supports his conviction.

C.

Helem's final argument is that the district court erred when it refused his request that it instruct the jury that consent of the victim is a defense to section 2261(a)(2). The defendant raised the defense of consent to both charges, interstate domestic violence, of which he was convicted, and kidnaping, of which he was acquitted. The court

10

did not specifically instruct the jury that consent is a defense to interstate domestic violence but did specifically instruct the jury on the consent defense to the kidnaping charge. J.A. at 31, 349.

Helem's argument is without merit. When considering a challenge to jury instructions, the inquiry is limited to "whether taken as a whole, the instruction fairly states the controlling law." United States v. Cobb, 905 F.2d 784, 788-89 (4th Cir. 1990), cert. denied, 498 U.S. 1049 (1991). A particular jury instruction "may not be judged in artificial isolation, but must be viewed in the context of the overall charge." Cupp v. Naughten, 414 U.S. 141, 146-47 (1973). The district court instructed the jury as follows:

> Title 18 United States Code Section 2261(a)(2), a federal law, makes it a federal crime for anyone to cause a spouse or intimate partner to cross a state line by force, coercion, duress, or fraud and in the course of, or as a result of that conduct to intentionally commit a crime of violence and thereby cause bodily injury to this spouse or intimate partner. In order to find a Defendant guilty of interstate domestic violence, you must be convicted that the Government has proved beyond a reasonable doubt each of the following four elements. One, that the Defendant, Mr. Helem, and Denise are spouses or intimate partners. Second, that the Defendant caused Denise to cross a state line by force, coercion, duress, or fraud. Third, that in the course of or as a result of that conduct, the Defendant intentionally committed a crime of violence upon Denise Custis Helem; and finally the fourth element, and that as a result of this crime of violence, Denise was bodily injured. Now those are the four elements, and each of them must be satisfied to you beyond a reasonable doubt. The term coercion and duress, coercion and duress are interchangeable. Coercion or duress exists when an individual is subject to actual or threatened force of such a nature as to induce a well-founded fear of impending death or serious bodily harm from which there is no reasonable opportunity to escape. Under this law, bodily injury means any act except one done in self-defense, that results in physical injury or sexual abuse. The term crime of violence means an offense that has as an element

11

the use, attempted use, or threatened use of physical force against the person or property of another or conduct which by [its] nature presents a serious potential risk of physical injury to another. Crime of violence includes kidnaping or aggravated assault. Now that concludes the explanation of this Count One, interstate domestic violence.

J.A. at 346-48 (emphasis added). The words "force, coercion, or duress" necessarily require that the victim is a non-consenting participant in the interstate travel. Further, under the court's definition of "coercion or duress," the jury necessarily had to have eliminated the victim's consent as a reasonable possibility in order to find that she had "no reasonable opportunity to escape" from "impending death or serious bodily harm." Thus, when considered as a whole, the court's instruction on interstate domestic violence fairly apprised the jury that consent precluded a conviction under section 2261(a)(2).

In addition, there are significant differences between the two statutes under which the defendant was charged. The kidnaping statute does not require that the victim be a spouse or intimate partner, nor does it require that the victim suffer bodily injury as section 2261(a)(2) requires. The kidnaping statute does require that the victim be held for ransom, reward, or some benefit. See United States v. Bailey, 112 F.3d 758, 767 (4th Cir. 1996), cert. denied, 118 S.Ct. 240 (1997) ("[W]e find that the interstate domestic violence statute proscribes conduct distinct from that criminalized by the kidnaping statute"). Thus, the jury instructions for the two offenses need not mirror each other.

Finally, even the fact that the jury acquitted the defendant of kidnaping does not mean that the jury would have acquitted the defendant of interstate domestic violence if the specific language regarding consent as a defense had been included in the charge. Even if one jury verdict appears to be inconsistent with another, it is ordinarily not a valid basis for a subsequent attack on a conviction. See United States v. Powell, 469 U.S. 57, 65 (1984). Accordingly, for these reasons, we find no reversible error was committed.

V.

Accordingly, Helem's conviction and sentence are hereby

AFFIRMED.

12