**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-4912**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MALIEK KEARNEY,

Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Baltimore. George L. Russell, III, District Judge.  (1:16-cr-00486-GLR-1)

Submitted:  September 11, 2020                    Decided:  December 16, 2020

Before HARRIS, RICHARDSON, and QUATTLEBAUM, Circuit Judges.

Affirmed by unpublished opinion. Judge Quattlebaum wrote the opinion, in which Judge Harris and Judge Richardson joined.

Joseph A. Esparza, GROSS & ESPARZA, P.L.L.C., San Antonio, Texas, for Appellant. Robert K. Hur, United States Attorney, James G. Warwick, Assistant United States Attorney, Kenneth S. Clark, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

QUATTLEBAUM, Circuit Judge:

On August 25, 2015, law enforcement found active-duty Army soldier Karlyn Ramirez dead in the upstairs master bedroom of her off-post home near Fort Meade military base in Severn, Maryland. She suffered three gunshot wounds. Her four-month-old infant lay in her arms unharmed. Investigators concluded that Ramirez was likely murdered around 9:45 p.m. the prior day.

Just over a month earlier, Ramirez married Maliek Kearney, an active-duty Army sergeant stationed at Fort Jackson, South Carolina. They wed shortly after Ramirez gave birth to their daughter. Ramirez and Kearney lived in separate states, as Kearney was stationed at Fort Jackson, and Ramirez at Fort Meade. This geographic distance, along with allegations of infidelity, strained their relationship. After only two weeks of marriage, Kearney drove to Maryland unannounced, in an effort to reconcile. That effort failed and, in fact, led Ramirez to request a no-contact order against Kearney and make plans for a divorce.

After Kearney returned from Maryland to South Carolina, he planned Ramirez's murder. Dolores Delgado, a former soldier and Kearney's mistress who lived in Florida, helped in the planning. She provided both the gun and a vehicle with extra gas cans so that Kearney could avoid the risk of being seen purchasing gas during the trip to Maryland. And, to support his alibi, Delgado also used Kearney's cell phone in South Carolina as he drove to Maryland. Finally, she disposed of the murder evidence.

A federal grand jury indicted Kearney and Delgado, charging them with interstate travel to commit domestic violence resulting in Ramirez's death. Delgado pled guilty. The

government then obtained a superseding indictment as to Kearney charging him with two counts: (1) interstate travel to commit domestic violence resulting in death in violation of 18 U.S.C. § 2261(a)(1); and (2) discharge of a firearm in relation to a crime of violence, as charged in count one, resulting in death in violation of 18 U.S.C.§ 924(c) and (j).[1]

Kearney moved to dismiss both counts, claiming, among other things, that murder did not constitute a predicate "crime of violence" to sustain the charges. The district court denied the motion. After an eleven-day trial in which Delgado provided detailed testimony about their planned murder, a federal jury found Kearney guilty on both counts. He was sentenced to life in prison as to count one and 120 months as to count two, to run consecutively for a total term of life in prison plus 10 years.

I.

Kearney appealed. He contends the district court erred in denying his motion to dismiss both counts of the superseding indictment based on the government's failure to prove the "crime of violence" elements of each count. He also challenges several evidentiary rulings at trial. We address those arguments in turn.

---

[1] The superseding indictment also included a charge for aiding and abetting as to both counts in violation of 18 U.S.C. § 2.

A.

We review a district court's denial of a motion to dismiss an indictment de novo when, as here, it depends solely on questions of law. *United States v. Said*, 798 F.3d 182, 193 (4th Cir. 2015).

1.

The first count charged a violation of 18 U.S.C. § 2261. That statute makes it unlawful for a person to travel in interstate commerce with the "intent to kill, injure, harass, or intimidate a spouse, intimate partner, or dating partner, and . . . in the course of or as a result of such travel or presence, commit[] or attempt[] to commit a crime of violence against that spouse, intimate partner, or dating partner . . . ."[2] 18 U.S.C. § 2261(a)(1). "Crime of violence" for purposes of § 2261 means "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another . . . ." 18 U.S.C. § 16(a).

Thus, count one charged Kearney with traveling in interstate commerce with the intent to kill his spouse, Karlyn Ramirez, and committing "murder, a crime of violence against Karlyn Ramirez," using a dangerous weapon during the offense resulting in her death in violation of 18 U.S.C. § 2261. J.A. 26. Kearney claims that the crime of violence

---

[2] The interstate domestic violence statute, 18 U.S.C. § 2261, is part of the Violence Against Women Act ("VAWA") which was enacted in 1994 in recognition of escalating incidents of domestic violence, sexual assault and other violent crimes against women. *Brzonkala v. Virginia Polytechnic Inst. & State Univ.*, 169 F.3d 820, 827 (4th Cir. 1999).

4

element of § 2261(a)(1) cannot be met because murder can be accomplished without the use of violent physical force.

Here, at a minimum, the referenced murder involved an intent to kill or to inflict such bodily harm that death would most likely result and the district court instructed the jury accordingly. *See Brown v. United States,* 942 F.3d 1069, 1073 (11th Cir. 2019) (considering the crime to which the defendant pleaded guilty); *United States v. Page*, 167 F.3d 325, 332 (6th Cir. 1999) (noting the offenses offered to the jury as the underlying "crime of violence" for interstate domestic violence charge); *United States v. Helem*, 186 F.3d 449, 455 (4th Cir. 1999) (acknowledging *Page* and recognizing that "the defendant's conduct, as presented to the jury, falls within the scope of § 2261(a)(2) under at least two theories of liability."). The Supreme Court in *United States v. Castleman* explained that "[i]t is impossible to cause bodily injury without applying force in the common-law sense." *United States v. Castleman*, 572 U.S. 157, 170 (2014). In other words, "the knowing or intentional causation of bodily injury necessarily involves the use of physical force," regardless of whether an injury resulted from direct or indirect means. *Id.* at 169. Then, following *Castleman*, we concluded that Maryland Assault with Intent to Murder ("AWIM") is a crime of violence. *United States v. Battle*, 927 F.3d 160, 165 (4th Cir. 2019). We reasoned "it is impossible to intend to cause injury or death without physical force as contemplated under the [Armed Career Criminal Act]." *Id.* at 167. Finally, but unsurprisingly, we have concluded that murder is a "quintessential crime of violence." *In re Irby*, 858 F.3d 231, 237 (4th Cir. 2017). Thus, we reject Kearney's challenge to count one.

5

2.

The second count in Kearney's indictment involves a charged violation of 18 U.S.C. § 924(c) and (j). That statute criminalizes the use or carrying of a firearm during and in relation to any crime of violence. For purposes of § 924(c), "crime of violence" means a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another . . . ." 18 U.S.C. § 924(c)(3)(A).

Thus, count two charged that Kearney, "did knowingly use, carry, and discharge a firearm during and in relation to a crime of violence . . . the discharge of a firearm causing the death of Karlyn Ramirez, during and in relation to the crime of interstate travel to commit domestic violence resulting in death, in violation of 18 U.S.C. § 2261, as charged in Count One of this Indictment, which is incorporated by reference herein." J.A. 27. In the context of Section 924(c), count one's statutory violation of 18 U.S.C. § 2261 serves as the referenced "crime of violence." In other words, the crime of interstate travel to commit domestic violence resulting in death serves as the predicate "crime of violence" for the § 924(c) charge.

Kearney argues that 18 U.S.C. § 2261 itself fails to constitute a crime of violence to support the § 924(c) conviction because the "full range of conduct" under § 2261 does not require the use of violent physical force. But count one requires the commission of a crime of violence—murder. And a crime that requires the commission of a crime of violence in every case must necessarily itself be a crime of violence. We addressed this point generally in *United States v. Faulls*, where we determined that interstate domestic violence in violation of 18 U.S.C. § 2261(a)(2) requires a defendant to have committed an underlying

6

crime of violence. *United States v. Faulls*, 821 F.3d 502, 514–15 (4th Cir. 2016). Indeed, the requirement of a "crime of violence" in § 2261 is precisely what distinguishes it, for example, from 18 U.S.C. § 2261A, which similarly prohibits interstate travel with the intent to injure or harass another person, but without the need for the commission of a crime of violence. "Importantly," as we held in *Faulls*, "in a prosecution for interstate domestic violence, the jury is charged with finding, unanimously and beyond a reasonable doubt, the commission of a specific underlying crime of violence, as well as the elements of that offense." *Id*. The same is true here. A guilty verdict necessarily required the jury to find that Kearney committed a crime of violence. Thus, we conclude the district court did not err in denying Kearney's motion to dismiss counts one and two.

## B.

We now turn to Kearney's evidentiary challenges.

## 1.

Kearney claims that the district court erred in admitting Delgado's testimony about her relationship with Kearney and incidents of alleged violence against Delgado in violation of Federal Rules of Evidence 404(b) and 403. Because Kearney failed to object to the testimony on the grounds of Rule 404(b) or 403 and only objected on relevancy grounds, the parties agree—as do we—that our review is for plain error.

In order to establish a plain error, "the defendant must show there was an error, the error was plain, and the error affected [the defendant's] substantial rights." *United States v. Garcia-Lagunas*, 835 F.3d 479, 492 (4th Cir. 2016) (internal citation and quotation marks omitted). To affect substantial rights, the error must have been prejudicial, meaning

7

that it affected the outcome of the district court proceedings, save for a certain category of structural errors. *United States v. Ramirez-Castillo*, 748 F.3d 205, 215 (4th Cir. 2014). We only exercise our discretion to correct the forfeited error if the error seriously affects the fairness, integrity or public reputation of judicial proceedings. *United States v. Olano,* 507 U.S. 725, 732 (1993).

Aside from the challenged testimony, the government presented the jury with substantial testimonial and physical evidence against Kearney during the eleven-day trial. Thus, even if the testimony was admitted in error, Kearney has failed to show that the admission affected the outcome of the trial. Accordingly, we find no plain error as to this evidentiary ruling.

2.

Kearney also challenges the district court's exclusion of website printouts about potential lane closures on I-95 during the week of the murder. He argues this evidence was relevant to his defense as it could undercut testimony that he drove to Maryland and back to South Carolina within a specific window of time. The government contends these materials were hearsay, irrelevant and likely to confuse the jury.

We review the district court's refusal to admit evidence under an abuse of discretion standard. *See United States v. Henry*, 673 F.3d 285, 291 (4th Cir. 2012). "Judgments of evidentiary relevance and prejudice are fundamentally a matter of trial management, for '[t]rial judges are much closer to the pulse of a trial than we can ever be and broad discretion is necessarily accorded them.'" *United States v. Benkahla*, 530 F.3d 300, 309 (4th Cir. 2008) (internal citations omitted). In light of Delgado's testimony about the

8

sequence of events leading up to the murder, which was corroborated by other evidence, we do not believe that the district court abused its discretion in deciding that these printouts were not reliable and had the potential to cause jury confusion.

3.

Finally, Kearney challenges the sufficiency of the evidence to support his conviction. "A defendant challenging the sufficiency of the evidence to support his conviction bears a heavy burden." *United States v. Beidler,* 110 F.3d 1064, 1067 (4th Cir. 1997) (internal quotation marks omitted). We consider whether there is substantial evidence, taken in the light most favorable to the government, to support the criminal conviction. *Id.* Substantial evidence is "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Alerre,* 430 F.3d 681, 693 (4th Cir. 2005) (internal quotation marks omitted). On appeal, this Court does not reweigh the evidence, or weigh credibility as the jury would. *Id.* This Court can "reverse a conviction on insufficiency grounds only when the prosecution's failure is clear." *United States v. Moye,* 454 F.3d 390, 394 (4th Cir. 2006) (en banc) (internal quotation marks omitted). With this standard in mind, we readily affirm the conviction.

## II.

Accordingly, we affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*